IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DAVID LEN SIMS, §<br>    #2128234, §<br>        MOVANT, §<br> §<br>v. §<br> §<br>DIRECTOR, TDCJ-CID §<br>        RESPONDENT. § | CASE NO. 3:21-CV-524-L-BK |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this civil action was referred to the undersigned United States magistrate judge for case management, including the issuance of findings and a recommended disposition on the petitioner's application for habeas corpus under 28 U.S.C. § 2254. As explained below, the petition should be **DENIED**.

**I. BACKGROUND**

A Navarro County jury convicted Petitioner David Len Sim of aggravated robbery with a deadly weapon. *See The State of Texas v. David Len Sims*, D36869 (13th Dist. Ct. Navarro Cnty. April 13, 2017); Doc. 17-2 at 89. The trial court sentenced Sims to 82 years' imprisonment. *See id.*; Doc. 17-2 at 89. The Court of Appeals for the Tenth District of Texas affirmed the trial court's judgment. *Sims v. State*, No. 10-17-00170-CR, 2019 WL 637989 (Tex. App.—Waco Feb. 13, 2019, pet ref'd); Doc. 18-5. The Texas Court of Criminal Appeals (CCA) refused

Sims's request for discretionary review.[1] *Sims v. State*, No. PD-0308-19 (Tex. Crim. App. June 19, 2019); Doc. 17-1.

Sims filed a state habeas application. Doc. 18-16. The state habeas trial court issued findings and conclusions of law recommending that the petition be denied, and the CCA denied the application without written order. *Ex parte Sims*, WR-91,232-01 (Tex. Crim. App. Sept. 16, 2020); Doc. 18-14; Doc. 18-16 at 125-126.

Sims then filed the instant federal habeas petition and supporting memorandum in which he makes the following claims for relief:

1. He was constructively denied counsel on direct appeal because his appellate attorney decided not to obtain transcripts of the jury selection proceedings.

2. His appellate counsel rendered ineffective assistance by failing to have the jury selection proceedings transcribed.

3. His trial counsel provided ineffective assistance by failing to object to evidence of extraneous acts during the guilt phase or to request a limiting instruction.

4. His trial counsel rendered ineffective assistance by failing to object to the jury charge or request an instruction informing the jury that extraneous offenses must be proven beyond a reasonable doubt.

Doc. 1 at 6-11; Doc. 10 at 4-20. The State filed a response, Doc. 23; however, Sims did not file a reply.

## II. APPLICABLE STANDARD OF REVIEW

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. When reviewing state proceedings, a federal court does not sit as

---

[1] Sims also filed a second appeal complaining about the representation of his appellate counsel. *See* Doc. 18-1 at 1. The Court of Appeals for the Tenth District of Texas dismissed that out-of-time appeal for lack of jurisdiction. Doc. 18-8 at 1-2.

super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986). A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

Federal habeas corpus relief for state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Section 2254(d) provides that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *see also Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997).

As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011). A petitioner must show there was no reasonable basis for the state court to deny relief. *Id.* at 98.

A federal district court must be deferential to state court findings supported by the record. *See Pondexter v. Dretke*, 346 F.3d 142, 149-152 (5th Cir. 2003). The AEDPA has modified a

federal habeas court's role in reviewing state prisoner applications to prevent federal habeas "retrials" and to ensure that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693 (2002). A state court's factual findings "shall be presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness also applies to unarticulated findings that are necessary to the state court's conclusions of mixed law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir. 2001).

Where the highest state court denies a habeas petition without accompanying reasons, the court "looks through" to the last reasoned state-court decision on the merits and gives a rebuttable presumption that the higher state court denied the petition in reliance on the lower court's reasoned opinion. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *see also Langley v. Prince*, 926 F.3d 145, 159 (5th Cir. 2019) (applying *Sellers* to defer to the state appellate court's findings). But when there is no reasoned state-court decision on the merits, the federal court "must determine what arguments or theories…could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018); *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018). And if "such disagreement is possible, then the petitioner's claim must be denied." *Morin v. Davis*, Civil Action H-17-2045, 2019 WL 4396839, at *2 (S.D. Tex. Aug. 21, 2019, *rec. accepted* 2019 WL 4394503 (S.D. Tex. Sept. 13, 2019) (citing *Beaudreaux*, 138 S. Ct. at 2558). The Supreme Court has often emphasized that "this standard is difficult to meet" "because it was meant to be." *Beaudreaux*, 138 S. Ct. at 2558; *Mejia*, 906 F.3d at 314.

### III. ANALYSIS

Sims makes four ineffective assistance of counsel ("IAC") claims, two directed at trial counsel and two directed at appellate counsel. Doc. 1 at 6-11; Doc. 10 at 4-20. To establish ineffective assistance of counsel at trial, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, a petitioner must show that his attorney's actions "fell below an objective standard of reasonableness." *Id.* at 689. In evaluating an attorney's performance, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," or that under the circumstances the challenged action might be considered sound trial strategy. *Id.* Under *Strickland's* prejudice prong, a petitioner additionally must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is probability sufficient to undermine confidence in the outcome. *Id.* A petitioner must "affirmatively prove, not just allege, prejudice." *Id.* at 693. If he fails to prove the prejudice component, the court need not address the question of counsel's performance. *Id.* at 691. Additionally, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

Further, because the CCA rejected Sims' claims on the merits, this Court reviews them under a "doubly deferential" standard, taking "a 'highly deferential' look at counsel's performance," under *Strickland*, 466 U.S. at 689, "through the 'deferential lens of § 2254(d).'" *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoted cases omitted); *see also Salazar v. Dretke*, 419 F.3d 384, 398-99 (5th Cir. 2005) ("Under Texas law, a denial of a habeas petition, as

opposed to a dismissal, suggests that the state court adjudicated the claim on the merits.") (citations omitted). Considering the deference afforded by Section 2254(d)(1), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter,* 562 U.S. 86, 101.

### A. Appellate Counsel's Failure to Obtain Transcripts of the Jury Selection Proceedings

Sims's appellate counsel did not obtain transcripts of the jury selection proceedings. She wrote a letter to Sims explaining that she had spoken with the court reporter and decided not to request a transcript of jury selection proceedings because she "determined that there was no objection to the array and that cuts off any argument regarding the *voir dire* because no error was preserved." Doc. 18-16 at 50-51. She further explained that although "there were challenges for cause, there is no way on a writ to make the case that the case would have turned out differently had the defense attorney properly preserved error." Doc. 18-16 at 50. Based on counsel's decision, Sims claims (1) that he was constructively denied counsel on direct appeal, and (2) that his appellate counsel was ineffective. Doc. 1 at 6-7; Doc. 10 at 4-10.

A counsel's performance on appeal is also judged the two-pronged *Strickland* test. *See Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998). "On appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available." *Id.* at 1043. "Rather, it means, as it does at trial, counsel performing in a reasonably effective manner." *Id.* to show prejudice, a petitioner must "show a reasonable probability that, but for his counsel's unreasonable failure…, he would have prevailed on his appeal." *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001) (citations omitted). Additionally, appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among

them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Although it is "possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim…it is difficult to demonstrate that counsel was incompetent." *Id.*

Based on this standard, Sims fails to show his appellate counsel's performance violated his right to effective representation. To begin, Sims's argument that his counsel's performance was so bad as to amount of a constructive denial of counsel under *United States v. Cronic*, 466 U.S. 648 (1984)—relieving him of his burden to show prejudice under *Strickland*—is not persuasive. "A constructive denial of counsel occurs…in only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all." *Childress*, 103 F.3d at 1229 (internal question marks and citation omitted). "When the defendant complains of errors, omissions, or strategic blunders, prejudice is not presumed…" *Jackson v. Johnson*, 150 F.3d 520, 525 (5th Cir. 1998). "'[B]ad lawyering, regardless of how bad, does not support the [*per se*] presumption' of prejudice." *Childress*, 103 F.3d at 1228-29 (citation omitted).

Bad lawyering—specifically an error or strategic blunder—is precisely what Sims is complaining about here. Thus, *Cronic* does not apply, and the CCA's rejection of Sims's first ground for relief was not contrary to, nor did not it involve an unreasonable application of, clearly established law. *See* 28 U.S.C. § 2254(d)(1).

Turning to Sims's second claim—that even if there was no constructive denial of counsel, his counsel's performance was deficient under *Strickland*—the CCA did not unreasonably apply *Strickland* in denying this claim because Sims fails to show prejudice; to-wit, that his counsel's decision to obtain a transcript "would have led to solid, meritorious arguments based on directly

controlling precedent which his counsel should have brought to the appellate court's attention." *Higgins v. Cain*, 720 F.3d 255, 262 (5th Cir. 2013) (rejecting failure-to-obtain-transcripts IAC claim because the petitioner failed to show prejudice); *see also Mullen v. Blackburn*, 808 F.2d 1143, 1146 (5th Cir. 1987) (rejecting due process claim premised on the lack of a jury selection proceeding transcript where the petitioner failed to show how the absence of such a transcript prejudiced him). Sims never explains what transcripts of the jury selection proceeding would have shown, much less that they would have unearthed a meritorious argument for appeal. *See Higgins*, 720 F.2d at 262.

In sum, the CCA did not unreasonably apply *Strickland* in denying Sims's two grounds for relief stemming from the failure of his appellate counsel to obtain transcripts of the jury selection proceedings.

    **B.**    **Trial Counsel's Failure to Object to Evidence of Extraneous Offenses, Failure to Seek a Limiting Instruction, and Failure to Request a Beyond-Reasonable Doubt Instruction**

Sims's third and fourth grounds for relief relate to his contention that, during the guilt-innocence phase of his trial, the State admitted testimonial and video evidence of extraneous offenses to which his counsel should have objected or at least sought a limiting instruction in the jury charge explaining that any extraneous offenses needed to be proven beyond a reasonable doubt before the jury could consider them. *See* Doc. 1 at 8; Doc. 10 at 13-20.

As the State notes, however, it is unclear from the record that the jury ever viewed the contested video evidence, which was located on State's exhibits 16A, 17A, and 17B. Doc. 23 18-21. As for 16A, while the exhibit was admitted in its entirety, only certain clips from the collection of videos on the exhibit were shown to the jury during the trial. *See* Doc. 17-8 at 86-

92; Doc. 17-9 at 30-33. According to the transcript, these clips did not hint at other extraneous offenses; instead, they contain security footage from different vantage points in the store and parking lot that show the robbery, the victim's actions immediately before it, and the suspect leaving the store afterwards. Doc. 17-8 at 86-92; Doc. 17-9 at 30-22. As for 17A and 17B, which were videos of Sims's interview with police that apparently referenced extraneous offenses, these exhibits were not shown to the jury when they were admitted. Doc. 17-8 at 109-10. The parties were aware that some of the video interview might need to be redacted before it was played to the jury, but the State did not intend to play it at the time of admission. Doc. 17-8 at 125.

Nevertheless, during closing argument, the State told the jury they could view parts of these exhibits during deliberations that were not shown during the trial. Doc. 17-10 at 49. However, the record does not reflect that the jury ever did so. Only the following sequence of relevant events is ascertainable from the transcript:

The jury requested to view certain exhibits including 16A and the police interview at 10:49 a.m. Doc. 17-2 at 81. The judge determined that the exhibits should be viewed in the courtroom in the presence of the parties. Doc. 17-10 at 58. The jury, in the courtroom and in the presence of the parties, viewed an exhibit, although it is unclear from the transcript what exhibit was viewed and what parts of it were viewed. Doc. 17-10 at 58. Around an hour later, at noon, the jury was back in deliberations and requested a lunch. Doc. 17-2 at 82. According to the trial judge, the jury resumed deliberations around 1:00 p.m. after lunch. *See* Doc. 17-10 at 59. And the jury reached a verdict by 2:30 p.m. Doc. 17-10 at 59.

The upshot is that, according to the State, there was not time during the documented hour-long period that the jury watched video evidence to view the objectionable parts of it. Doc. 23 at 18-21. The State notes that Sims claimed in his appellate brief that an interview with a Susie Jackson that mentioned extraneous offenses on Exhibit 16A lasted over an hour. Doc. 23-1 at 10. Also, a detective during the trial testified that 17A and 17B were, combined, around two and half hours. Doc. 23-1 at 46.

Further, the State notes that both parties knew that it would be inappropriate for the jury to view some parts of the evidence. *See* Doc. 23 at 20; Doc. 23-1 at 47. Given that fact and the fact that the video exhibits were played in the courtroom with the parties present, the State argues that it is unlikely that any video mentioning extraneous offenses was played. Doc. 23 at 20.

The Court agrees that Sims can only speculate that the jury actually saw the video evidence he says his counsel should have taken affirmative measures to combat; and he therefore can only speculate that that evidence swayed the jury such that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Nee v. Lumpkin*, Civil Action No. H-21-4192, 2022 WL 2118370, at *5 (S.D. Tex. June 13, 2022) ("An ineffective assistance of counsel claim based on speculation or conclusional rhetoric will not warrant habeas relief.") (citing *Lincecum v. Collins*, 958 F.2d 1271, 1279 (5th Cir. 1992)).[2]

---

[2] The state intermediate appellate court reviewed this claim and rejected it because there was no "explanation in the record for trial counsel's failure to object to the admission of evidence or to request a jury instruction" and therefore "the presumption of sound trial strategy cannot be overcome." *Sims*, 2019 WL 637989, at *4. But even if the CCA is presumed to have adopted the intermediate appellate court's reasoning under *Sellers* as the last state court to issue a

As for the testimonial evidence, Smith references the testimony of the manager of the store that was robbed. She testified about reports of robbery in that area and the fact that the robberies stopped after Sims was arrested. Doc. 17-8 at 94, 102-103. However, the manager never actually identified Sims as the perpetrator of the other robberies. Doc. 17-8 at 94, 102-103. Thus, Sims's counsel might have made the reasonable strategic decision to avoid drawing attention to this brief testimony, which did not necessarily link Sims to other robberies. *See*, *e.g.*, *Strickland*, 466 U.S. at 689 (noting that, to show ineffective assistance of counsel, the petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'") (citation omitted). And, at any rate, Sims has not shown prejudice in relation to his counsel's failure to object to this brief testimony. Even without this testimony, there was other evidence against Sims—namely, that he was in possession of and tried to cash multiple lottery tickets that were identified as being taken during the robbery and then gave different explanations as to how he came into possession of those tickets; that he drove the same kind and color of car that was identified as the getaway vehicle; and that he possessed articles of clothing such as shoes, a hat, and a pair of white gloves that were the same or similar to those worn by the robber. *See* Doc. 17-10 at 46-57 (State's closing argument).

In sum, Sims's third and fourth ground for habeas relief lack merit and should be denied.

---

reasoned decision for rejecting the claim, this Court is not limited to only considering the deficient-performance prong of the *Strickland* analysis. Instead, when the state habeas court rejects an IAC claim without considering the prejudice prong of the analysis, the federal habeas court can review that issue *de novo*. *See*, *e.g.*, *Garza v. Thaler*, 909 F.Supp.2d 578, 613 (W.D. Tex. Dec. 18, 2012) ("In those instances in which the state courts failed to adjudicate either prong of the Strickland test, this Court's review of the unadjudicated prong is *de novo*.") (citing *Porter v. McCollum*, 558 U.S. 30, 38-39 (2009); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).

### IV. REQUEST FOR AN EVIDENTIARY HEARING

Sims requests an evidentiary hearing. *See* Doc. 10 at 20-21. However, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181; *see also Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011). Sims cannot overcome the limitation of Section 2254(d) on the record that was before the state court. Accordingly, he is not entitled to an evidentiary hearing and his request for one should be denied.

### V. CONCLUSION

For the foregoing reasons, Sims's habeas corpus petition should be **DENIED**, and this case should be **DIMISSED WITH PREJUDICE.**

**SO RECOMMENDED** on January 10, 2023.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).